UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:17-CR-0209-KJM |
| Plaintiff, | |
| v. | ORDER |
| RODNEY FLUCAS, | |
| Defendant. | |

Rodney Flucas, a 50-year old special education teacher, is charged with transporting three minors and one adult with intent to engage in elicit sexual activity. *See* Third Superseding Indictment, ECF 58. Three of the alleged victims are his own daughters. He now moves to suppress DNA evidence linking him to these victims, arguing the search warrants ordering his buccal swab lacked probable cause. Mot., ECF No. 33, at 4-8. The government opposes. Opp'n, ECF No. 35. Defendant filed a reply. Reply, ECF No. 53. The court submitted the motion on April 30, 2018. As explained below, the court DENIES the motion.

////

////

1

I.   LEGAL STANDARD

"[O]ne whose Fourth Amendment rights are violated may successfully suppress evidence obtained in the course of an illegal search and seizure." *Rakas v. Illinois*, 439 U.S. 128, 138 (1978). The Fourth Amendment requires that the underlying search warrant be based on "probable cause, supported by Oath or affirmation[.]" U.S. Const. amend. IV. Specifically, the law enforcement official seeking the warrant must have established probable cause to believe the evidence sought would assist in finding or convicting a particular defendant for a particular offense. *Bill v. Brewer*, 799 F.3d 1295, 1300 (9th Cir. 2015) (citing *Dalia v. United States*, 441 U.S. 238, 255 (1979)).

This probable cause analysis is "practical" and "nontechnical," and it routinely requires judges to draw "reasonable inferences." *Illinois v. Gates*, 462 U.S. 213, 231, 240 (1983) (citation and quotations omitted). The issuing judge need only find under "'the circumstances set forth in the affidavit before him . . . a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013) (quoting *Gates*, 462 U.S. at 238); *see also Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967) (requiring only "cause to believe" the evidence sought "will aid in a particular apprehension or conviction"). Given this lenience, the issuing judge's probable cause determination "should be paid great deference." *Gates*, 462 U.S. at 236 (citations and quotations omitted); *see also United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir. 2007). Even in "'borderline cases, preference will be accorded to warrants and to the decision of the magistrate [judge] issuing it.'" *Crews*, 502 F.3d at 1135 (quoting *United States v. Terry*, 911 F.2d 272, 275 (9th Cir. 1990)). The burden is on defendant to show the challenged search violated his Fourth Amendment rights. *Rakas*, 439 U.S. at 132 n.1 (citations omitted).

II.   ANALYSIS

Here, defendant has not shown a Fourth Amendment violation. Flucas's 18-year-old daughter, identified as "Person 2,"[1] reported to local law enforcement that Flucas had recently

---

[1] The Indictment lists each victim by an anonymous identifier in the form of "Person #." This order uses the Indictment's anonymous identifiers, to the extent applicable.

raped her, as he had done consistently since she was thirteen years old. Within days, Flucas was arrested on state incest and statutory rape charges. San Joaquin Superior Court Judge Ron A. Northup issued two warrants authorizing law enforcement to take a buccal swab DNA sample from defendant. *See* First Warrant, ECF 33-1 at 1-2; Second Warrant, ECF No. 33-1 at 9-10. Because the First Warrant was never executed, given that all bases for the First Warrant were incorporated into the Second Warrant, this court need not assess whether the First Warrant alone was supported by probable cause. Rather, the court analyzes whether probable cause existed when the Second Warrant issued. The following facts, all of which were included in Stockton Police Detective Yanell Ysais's supporting sworn affidavits, established probable cause that defendant's DNA sample would yield evidence of sexual assault and incest. *See* Ysais Aff., ECF No. 33-1 at 3-8; Ysais Suppl. Aff., ECF No. 33-1 at 11-15.

  A. <u>Person 2's Detailed Allegations</u>

   California law enforcement officers first learned of defendant's alleged sexual abuse on February 7, 2017. *See* Ysais Aff. at 2. The report came from defendant's 18-year-old daughter, Person 2, as she lay in a hospital bed recovering from a car crash. *Id.* at 1-2. She crashed while trying to "clear her head" after a fight with her father: A fight that started with her asking to go to a basketball game, and ended with defendant "put[ting] his penis in her vagina." *Id.* Defendant allegedly had been sexually abusing her for the past five years. He used sex toys to "teach [her] how to orgasm" when she was twelve, took her virginity when she was thirteen, and impregnated her when she was fourteen, though her son died immediately after his premature birth. *Id.* Person 2 also detailed how her father enticed her to have sex for years by offering her whatever she wanted in exchange. *Id.* After speaking with the officers, Person 2 submitted to a cervical swab DNA test as part of her sexual assault examination. *Id.* at 3.

   Based on this report, defendant was charged in state court with statutory rape and incest. *Id.* at 3. He was arrested on these state charges and he refused a sexual assault response test. *Id.*

3

B. Corroboration from Other Sources

The officers spoke to others living in defendant's home about Person 2's allegations. They talked to Person 2's best friend, not a biological relation, referred to as "Person 1." *Id.* Person 1 had moved into defendant's home several years prior when defendant and his wife and children lived in Oregon, and then moved with them to California in 2015. *Id.* While still living in Flucas's home, Person 1 corroborated the following details: Person 2 had asked defendant if she could go to the basketball game, but defendant refused and called Person 2 into his bedroom to talk. *Id.* at 4. Defendant and Person 2 spent twenty minutes in the room but Person 1 heard no talking, and then Person 2 left the room quietly. *Id.* When Person 2 came back to the house two days later to fetch her belongings, she told Person 1 she had been "getting raped" and that "others have been getting raped" as well. *Id.* Person 1 ultimately told the investigating officers said she did not believe Person 2. *Id.*

Defendant's wife and several of defendant's other children echoed this disbelief. *Id.* at 3-5. But one of Person 2's sisters confirmed that Person 2 had called her from the hospital after the accident to tell her defendant had been having sex with her since she was thirteen. *Id.* The sister also said Person 2 had previously reported defendant's sexual abuse to her school. *Id.*

With this information, and Person 2's consent to a DNA swab but defendant's refusal to provide a reference DNA sample, Detective Ysais applied for a warrant ordering defendant to submit to a buccal swab. *See* First Warrant. Detective Ysais said defendant's DNA reference sample would likely show defendant committed incest and statutory rape. Ysais Aff. at 5. Judge Northup agreed and issued the first bench warrant on February 22, 2017. *See* First Warrant.

C. Evasion of First Warrant

When the First Warrant issued, defendant had posted bail in his state case and been released from custody. *Id.* Detective Ysais began calling defendant's attorney to schedule a buccal swab appointment. Ysais Suppl. Aff. at 2. She called multiple times over three days, but each time defendant's attorney either did not respond or said he needed to talk to his client. *Id.* at 2-3. Detective Ysais then went to one of defendant's scheduled family court appearances. *Id.* at

3. Defendant never appeared. *Id.* Defendant's attorney tried to contact defendant to schedule a buccal swab appointment on March 1, but again he could not reach defendant. *Id.* Defendant then hired a new attorney, whom Detective Ysais also tried to call with no success. *Id.* at 4. Finally, two detectives tried to serve defendant at his home, but nobody answered the door. *Id.*

### D. <u>Supplemental Evidence Supporting Second Warrant</u>

After these unsuccessful attempts to execute or serve the First Warrant, Detective Ysais applied for the Second Warrant. *See* Second Warrant. She incorporated the basis for the First Warrant, but added a supplemental affidavit containing more evidence. *See* Ysais Suppl. Aff. Detective Ysais first cited as further evidence suggesting guilt defendant's evasion of the First Warrant. *Id.* at 2, 5.

Detective Ysais also mentioned defendant's involvement with Child Protective Services ("CPS"). *Id*. at 2-5. Specifically, she noted defendant had violated a February 2017 agreement with California CPS to stay away from his children; a violation which led to his children's transfer to foster homes in late February 2017. *Id.* at 3. She also cited two 2014 Georgia CPS investigations into defendant's alleged sexual abuse of Person 2 and several of her siblings. *Id.* at 2-4. One report was based on an anonymous tip that while living in Georgia, defendant had impregnated Person 2 and that her son had died after his premature birth. *Id.* at 2. Person 2's aunt had supported this tip, saying she too believed defendant had impregnated Person 2 and that Person 2's older sister, Person 4, likewise was molested and twice impregnated by defendant. *Id.*; *see also* Compl., ECF No. 1, ¶ 12 (discussing Georgia CPS Case # 17206409). In Georgia, both daughters denied the allegations. *Id*. The second Georgia CPS report included accusations from the mother of one of defendant's former wives, that defendant had sexually abused four of her grandchildren and that defendant admitted to fathering 23 children. Ysais Suppl. Aff. at 2; Compl. ¶ 12 (discussing Georgia CPS Case # 17250221). After this accusation, defendant lost his teaching position in Georgia. *Id.* at 3.

Judge Northup signed the Second Warrant, which was successfully executed and led to the collection of DNA evidence defendant now seeks to suppress.

E. <u>Probable Cause Conclusion</u>

These facts, all recited in Detective Ysais's sworn affidavits, provided a sufficient basis for Judge Northup's probable cause determination. Person 2's detailed allegation in February 2017 that her father sexually assaulted her continuously since she turned thirteen, standing alone, establishes probable cause for the search warrant. *See United States v. Sparks*, 265 F.3d 825, 830 (9th Cir. 2001) (affidavit based on victim's identification was supported by probable cause), *overruled on other grounds by United States v. Grisel*, 488 F.3d 844 (9th Cir. 2007). In particular, because Person 2 gave a detailed, direct, in-person eye-witness account, her report is presumptively reliable. *See United States v. Palos-Marquez*, 591 F.3d 1272, 1275 (9th Cir. 2010) ("the in-person nature of a tip gives it substantial indicia of reliability.") (citations omitted); *United States v. Phillips*, 76 Fed. App'x 195, 196-97 (9th Cir. 2003) ("[A] statement from a witness or victim of a crime can, standing alone, establish probable cause if it furnishes reliable facts sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect was the perpetrator.") (citation omitted).

The critical question facing Judge Northrop of course was not whether defendant was guilty of abusing his daughter; the question was whether there was probable cause to believe defendant's DNA sample would help to confirm this allegation. *See Bill v. Brewer*, 799 F.3d 1295, 1301 (9th Cir. 2015) (focusing on alleged connection between place to be searched and the crime suspected). Based on the facts alleged, given that Person 2 had submitted a DNA sample, there was probable cause to believe defendant's reference sample would show that he had had sexual intercourse with Person 2.

Defendant argues, without authority, that Person 2 is a consenting adult party to incest such that she faces criminal liability, and so her allegations should be held to the higher corroboration standards for informants. Reply at 1-4 (advancing only this argument; abandoning initial argument that Detective Ysais intentionally omitted pertinent facts from her affidavit). Defendant cites no precedent where a minor sexually assaulted by her father faced criminal exposure for incest upon her maturation, nor any precedent holding a victim in this circumstance to the heightened corroboration standards of an informant. Defendant's rule would clash with

binding precedent holding that "statements of a victim-witness to a crime need not be independently corroborated," *United States v. Federbush*, 625 F.2d 246, 252 (9th Cir. 1980), and that a "detailed eyewitness report of a crime . . . supplies its own indicia of reliability." *United States v. Banks*, 539 F.2d 14, 17 (9th Cir. 1976).

Nevertheless, Person 2's allegations were sufficiently corroborated. Person 1 corroborated key events leading up to Person 2's car accident: Person 2 had asked to go to a basketball game but defendant refused and instead called Person 2 into his bedroom and closed the door to "talk," yet Person 1 heard no talking for 20 minutes. Ysais Aff. at 2. A sibling confirmed Person 2 had mentioned years of sexual abuse and had reported the abuse to her school. *Id.* A Georgia CPS investigation report recorded allegations that defendant had impregnated Person 2 in 2014, and that the baby died soon after its premature birth. Ysais Suppl. Aff. at 3. These external sources corroborate material aspects of Person 2's report. Judge Northup had a substantial basis for his probable cause finding. Defendant has not met his burden to show his DNA sample was taken in violation of the Fourth Amendment.

III.    GOOD FAITH EXCEPTION

Even if the warrant lacked probable cause, the exclusionary rule's "good faith" exception precludes suppression here. This exception insulates from suppression any evidence obtained by an officer acting in objective good faith reliance on a warrant that is later deemed technically deficient. *Underwood*, 725 F.3d at 1084-85 (citing *United States v. Leon*, 468 U.S. 897, 922 (1984)). This exception generally applies unless (1) the affiant recklessly or knowingly misled the issuing judge; (2) the judge "wholly abandon[s] his [or her] judicial role"; (3) the affidavit is "so lacking in indicia of probable cause" that belief in its existence is "entirely unreasonable"; or (4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *Id.* at 1085 (quotation marks omitted; citing *Leon*, 468 U.S. at 922-23).

Beyond a passing reference to the good faith exception, defendant does not engage in any analysis. *See* Reply at 4 ("The Government contends that the 'good faith' exception would exempt the warrant, but the warrants [*sic*] omission of any corroboration puts it in conflict with

7

well-established rules which require corroboration of informant by some independent evidence that is suggestive of criminal activity." (verbatim quote)). Defendant's only substantive argument is that Detective Ysais's affidavits both lacked indicia of probable cause. But all that is required for the requisite indicia is a "colorable" probable cause argument. *Id.* at 1085. At a minimum, a thoughtful and competent judge could find the evidence and arguments cited above meet this low threshold. *Id.* Even if probable cause were lacking, the good faith exception insulates the DNA evidence here from suppression.

IV. <u>CONCLUSION</u>

       Defendant's motion to suppress is DENIED. This order resolves ECF No. 33.

       IT IS SO ORDERED.

DATED: May 31, 2018.

_____
UNITED STATES DISTRICT JUDGE