UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>RODNEY FLUCAS,<br><br>  Defendant. | No. 2:17-CR-0209-KJM<br><br>ORDER |

Rodney Flucas is charged in part with transporting three minors (Persons 1-3) and an adult (Person 4) in interstate commerce with the intent to engage in unlawful sexual activity. *See* Third Superseding Indictment, ECF 58. Persons 2, 3 and 4 are his daughters. On May 21, 2018, the court heard pre-trial motions and motions *in limine* ("MILs"). *See* Hr'g Mins., ECF No. 107. The court deferred ruling on four motions, resolved eight from the bench; it resolves the four deferred here.

I.  VICTIMS' PAST SEXUAL CONDUCT

The government moves to exclude all evidence of the victims' prior sexual conduct with anyone other than Flucas. *See* Gov't MIL No. 2, ECF No. 72. Conversely, Flucas moves to admit this evidence. Flucas MIL No. 1, ECF No. 103 (sealed); Gov't Opp'n, ECF No. 106 (sealed); ECF No. 104 (order granting stipulation to seal).

1

A.   Rule 412: Legal Standard

The Federal Rules of Evidence forbid questioning sex-crime victims about their sexual predisposition or sexual behavior. Fed. R. Evid. 412(a); *United States v. Torres*, 937 F.2d 1469, 1472 (9th Cir. 1991) ("We conclude that the term 'past sexual behavior' . . . includes all sexual behavior of the victim of an alleged sexual assault which precedes the date of the trial.")). Rule 412 categorically bars introducing this evidence in a criminal trial, unless it fits within three narrow scenarios: (A) The evidence could show someone else's semen was found inside the victim or someone else caused the victim's injury; (B) the prosecution offers evidence of prior sexual conduct between the victim and the accused to prove the charges, or the defense offers this evidence to prove consent; or (C) excluding the evidence "would violate the defendant's constitutional rights." Fed. R. Evid. 412 (b)(1)(A)-(C); *Torres*, 937 F.2d at 1473 (describing these three exceptions as "limited").

A party seeking to offer evidence under these narrow exceptions must "specifically describe[] the evidence and state[] the purpose for which it is to be offered," and the victims must be notified and given an opportunity to be heard *in camera* before testimony is elicited. Fed. R. Evid. 412(c)(1)-(2).

B.   Discussion

Here, and as detailed in Part II below, the government plans to introduce testimony from the four alleged victims identified in the charges against defendant (Persons 1-4) and from two other victims (Persons 5-6) to show the sexual abuse Flucas inflicted upon them for years. *See* Fed. R. Evid. 412(b)(1)(B) (permitting "evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct . . . offered by the prosecutor."). But the government seeks to exclude Flucas from asking these victims about or introducing evidence about the victims' prior sexual contact with anyone else. Gov't MIL No. 2 at 1-3. Conversely, Flucas wants to question Persons 1, 2, 4, 5 and 6 about other sexual partners. Flucas MIL No. 1 at 2-3 (sealed).

On May 21, 2018, the court heard the motions *in camera*. *See* H'rg Mins., ECF No. 107. All six victims were given an opportunity to appear in person or telephonically. Gov't

Opp'n at 2 (sealed). Person 5 made a telephonic statement; the remaining victims authorized the government to speak on their behalf, which it did. Having considered all *in camera* evidence and arguments, the court finds Flucas has not met his burden to admit any Rule 412(b) evidence at trial. *See United States v. Chang Ru Meng Backman*, 817 F.3d 662, 669-70 (9th Cir. 2016) (court may properly deny Rule 412(b) motion for lacking specificity).

Flucas argues evidence of the victims' other sexual partners is relevant to (1) reveal other semen contributors; and (2) prove other abusers may have caused the victims' trauma. Flucas MIL No. 1 at 2-3 (sealed). At hearing, defense counsel conceded there was no proper basis to admit evidence of Person 1's prior sexual acts, but maintained that evidence of Person 4's and Person 5's past sexual conduct "with other persons who might be the father" of their children is relevant to refute the government's DNA evidence showing Flucas fathered those children. *Id.* at 3 (sealed). But the government explains in opposition that these paternity tests were based on DNA, not semen, so Rule 412's source of semen exception is inapplicable. Gov't Opp'n at 7. At hearing, defense counsel offered no rebuttal. Accordingly, the court denies this basis for defendant's seeking to admit Rule 412(b) evidence.

Defense counsel also maintained at hearing that Person 2's sexual encounter with her boyfriend in early February 2017 is relevant to show the boyfriend was the source of the semen extracted from her cervical swab on February 7, 2018. Flucas MIL No. 1 at 2 (sealed). This argument also is unpersuasive. In opposition, the government represents the DNA extracted from Person 2's cervical swab was later compared to DNA reference samples from both Flucas and Person 2's boyfriend: The boyfriend was eliminated as a potential source of the semen found inside her; Flucas was confirmed as the likely contributor. Gov't Opp'n at 8. At hearing, defense counsel did not rebut this fact, but rather opined that Person 2 may be lying about when she slept with her boyfriend. If the DNA elimination evidence comes in as the government expects, Flucas's timing argument is irrelevant. At this point, the court denies this basis for defendant's seeking to admit Rule 412(b) evidence.

Finally, Flucas argues that evidence showing his son also abused victims is relevant because the victims' trauma might be attributable to the son's abuse, rather than Flucas's

3

abuse. *Id.* at 2-3 (sealed). This argument also lacks specificity. At hearing, defense counsel referenced a single incident in which he says his son sexually abused Person 6, although he previously had identified Person 2 as a victim of the son. He did not articulate additional details regarding the incident, including what injury or trauma the incident might have caused. Even if the defense could proffer these details, the argument likely would require testimony from a trauma expert for the court to accept it, which the defense has not retained. *Cf.* <u>King v. Evans</u>, 621 F. Supp. 2d 850, 858 (N.D. Cal. 2009) (emphasizing importance of expert testimony for conclusion as to what caused trauma or injuries in sexual assault cases; noting "a lay person certainly would not be able to discern" such conclusions). The court rejects this basis for admitting Rule 412(b) evidence.

Accordingly, the court GRANTS the government's motion to exclude all evidence and questions about the victims' sexual activities with anyone other than Flucas and DENIES Flucas's motion to admit this evidence, without prejudice.

II. <u>ADMITTING FLUCAS'S PRIOR BAD ACTS</u>

The government seeks to admit "the full extent" of Flucas's prior incidents of abuse against Persons 1 to 6. Gov't MIL No. 1, ECF No. 68. The government argues this evidence is relevant to prove Flucas's intent to continue his unlawful sexual activity when he crossed state lines and to convey a coherent narrative. Flucas opposes, arguing this is improper character evidence. *See* Opp'n, ECF No. 90, at 2.

A. <u>Predisposition Evidence under Rule 414</u>[1]

Typically, a court may not admit evidence of a person's character, traits or prior bad acts to "prove that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(a)(1), (b)(1). But Rule 414 allows precisely this kind of propensity character evidence in child molestation cases. Fed. R. Evid. 414(a) ("In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation."). Molestation under this rule refers to sexual abuse

---

[1] Although the similar standard under Rule 413 likely applies here, because the government does not rely on Rule 413, the court does not reach the issue.

<mark>4</mark>

against a child under age 14. Fed. R. Evid. 414(d). Rule 414 exemplifies Congress's view that propensity evidence in sex-crime cases involving children "is typically relevant and probative." 140 Cong. Rec. S12990 (daily ed. Sept. 20, 1994) (statement of Sen. Dole); *United States v. LeMay*, 260 F.3d 1018, 1026 (9th Cir. 2001) ("there is nothing fundamentally unfair" about Rule 414 propensity evidence).

Here, Flucas is not charged directly with child molestation; he is charged with transporting three minors with the intent to engage in unlawful sexual activity under 18 U.S.C. § 2423(a). The Ninth Circuit has not addressed how Rule 414 applies to a § 2423(a) charge, but every other federal court of appeals to address this question has applied Rule 414 in this context without qualification. *See, e.g.*, *United States v. Underwood*, 859 F.3d 386, 393-94 (6th Cir. 2017) (affirming decision to admit Rule 414 evidence in a prosecution for traveling in interstate commerce with intent to engage in illicit sexual conduct); *United States v. Batton*, 602 F.3d 1191, 1196-98 (10th Cir. 2010) (same); *United States v. McGuire*, 627 F.3d 622, 626-27 (7th Cir. 2010) (same); *United States v. Kelly*, 510 F.3d 433, 437-38 (4th Cir. 2007) (same); *United States v. Larson*, 112 F.3d 600, 605 (2d Cir. 1997) (same). And Flucas implicitly concedes this point. *See* Opp'n at 1 (arguing only that Rule 414 does not cover abuse of victims over age 14).

Both Rule 414 and § 2423(a) incorporate standards from other criminal statutes. Rule 414 defines "child molestation" as a violation of any existing state and federal laws against sexual conduct with a child. Fed. R. Evid. 414(d)(2). Section 2423(a) criminalizes transporting minors in interstate commerce "with intent that the [minor] engage in . . . any sexual activity for which any person can be charged with a criminal offense." I8 U.S.C. § 2423(a). The government anticipates the evidence will show Flucas intended to and did have sex with minors, which is prohibited by state and federal law. Accordingly, Rule 414 applies.

To be admissible under Rule 414, evidence of the alleged prior sexual abuse must be relevant and it must survive Rule 403's balancing test. Evidence is relevant if it has (a) "any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The charges under § 2423(a) require proof that Flucas transported minors in interstate commerce "with intent" to

engage the minors in criminal sexual activity. *See* I8 U.S.C. § 2423(a). Evidence that Flucas sexually abused the victims for years before transporting them across state borders makes it more probable that he intended to continue the abuse after crossing state lines. This prior bad act evidence is therefore relevant.

Relevant evidence may still "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice" to the defendant. Fed. R. Evid. 403. Weighing a prior bad act's probative versus prejudicial value requires courts to consider "(1) the similarity of the prior acts to the acts charged, (2) the closeness in time of the prior acts to the acts charged, (3) the frequency of the prior acts, (4) the presence or lack of intervening circumstances, and (5) the necessity of the evidence beyond the testimonies already offered at trial." *LeMay*, 260 F.3d at 1028.

Here, based on the sealed victim interviews and statements all *LeMay* factors favor admission. Under factor (1), the pattern of abuse of each victim is highly similar. Persons 1 to 6 have said the abuse started with sexual touching while they were minors in Flucas's care, and that the abuse progressed to Flucas's having intercourse with them inside his locked bedroom or closet while others were home. They describe the gifts and favors Flucas gave them in exchange for sex. Each describes the fear, isolation, financial control and manipulation Flucas used to control her. And they describe their belief at the time that the sex was consensual because Flucas was gentle, loving and fatherly. Because the government seeks to prove Flucas intended to continue this abuse when he crossed state lines, these prior acts are sufficiently similar to the charged conduct.

Factors (2), (3) and (4) likewise favor admission. Although some of the alleged molestations began occurring almost 18 years ago, "the historical notes to the rules and congressional history indicate there is no time limit beyond which prior sex offenses by a defendant are inadmissible. *United States v. Meacham*, 115 F.3d 1488, 1492 (10th Cir. 1997); *see also LeMay*, 260 F.3d at 1029 (affirming admission of evidence defendant abused his nieces eleven years prior to charged conduct); *see also United States v. Batton*, 602 F.3d 1191, 1198 (10th Cir. 2010) (finding evidence of molestation from 15 years earlier relevant because

"[d]espite the passage of time, the similarities between the victims and the conduct in each of the cases is striking—they fully support a pattern of grooming."); *Kelly*, 510 F.3d at 437 n.4 (upholding admission of twenty-two year old conviction and citing cases); *United States v. Meacham*, 115 F.3d 1488, 1491 (10th Cir. 1997) (upholding admission of Rule 414 evidence that defendant abused stepdaughters 30 years prior). Prior bad act evidence extending over many years is particularly relevant when, as here, the alleged abuse has been ongoing as opposed to "an isolated incident." *LeMay*, 260 F.3d at 1029. Because the prior bad act evidence here allegedly shows Flucas's abuse against his victims continued uninterrupted for years until just days before Flucas's state arrest in February 2017, with abuse allegedly persisting against Person 4 even after Flucas posted bail, this extended timespan "cuts in favor" of admission. *Id.*; *see also* Gov't MIL No. 1 at 6-15 (detailing timelines of abuse).

Factor (5) also favors admission. The government's theory is that Flucas carefully crafted an incestuous and abusive home environment in which each victim was groomed to believe she was in love with Flucas; that she had consented to every sexual encounter; that she was crazy for believing anything was wrong; that she would lose their family if she ever rebelled. Prior abuse evidence is therefore "helpful or practically necessary" to provide a cohesive narrative and to "fill in the details" about Flucas's sexual abuse. *LeMay*, 260 F.3d at 1029-30. In sum, evidence of Flucas's prior sexual abuse against Persons 1 to 6 is more probative than prejudicial.

Because this evidence is relevant and survives Rule 403's balancing test, all abuse that occurred before the victims turned 14 is admissible under Rule 414(a) for any purpose.

B.  "Other Purpose" Evidence under Rule 404(b)

The government also seeks to introduce other bad acts that exceed Rule 414(a)'s scope in two ways. First, some of the sexual abuse happened after the victims turned 14. Second, some of the alleged abuse goes beyond molestation: For instance, Flucas's alleged manipulation and extortion before and after the abuse, and his methods of verbal, physical and financial control over his victims. This bad act evidence is not admissible to show propensity, but it may be admissible "for other purposes, such as proving motive, opportunity, intent, preparation, plan,

knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). Ultimately, Rule 404(b) is an "inclusionary rule," under which evidence is inadmissible "only when it proves nothing but the defendant's criminal propensities." *United States v. Diggs*, 649 F.2d 731, 737 (9th Cir. 1981); *cf. United States v. Hearst*, 563 F.2d 1331, 1337 n.3 (9th Cir.1977) ("The Rule embodies an inclusionary rule which admits all evidence of other crimes relevant to an issue in a trial, except that which tends to prove *only* criminal disposition.") (citation and quotations omitted; original emphasis).

### 1. Rule 404(b) Factors

To be admissible under Rule 404(b), the prior bad act evidence (1) must prove a material, non-propensity point, (2) must not be too remote, (3) must be reliable enough to show the defendant actually committed the prior act, and (4) must be similar to the charged offense. *United States v. Verduzco*, 373 F.3d 1022, 1027 (9th Cir. 2004) (citations omitted).

Here, all Rule 404(b) requirements are satisfied. First, the bad act evidence described above is admissible for several non-propensity material points. It is admissible to prove Flucas intended to transport the victims to continue his ongoing abuse in a new state; to prove he had a plan to cross state lines rather than making a spontaneous decision to move; to prove an "opportunity" to abuse his victims while they remained under his control; and to fully capture Flucas's *modus operandi*.

Second, although the prior abuse evidence the government seeks to admit dates back 18 years, the proffered abuse was not isolated or disjointed; the abuse was continuous, overlapping and uninterrupted up until Flucas's arrest, and so it is not too remote in time. *See LeMay*, 260 F.3d at 1029; *see also* United States v. Johnson, 132 F.3d 1279, 1283 (9th Cir. 1997) ("This court has not identified a particular number of years after which past conduct becomes too remote.").

Third, the evidence as proffered is sufficient to show Flucas actually committed the alleged prior abuse. The government anticipates DNA evidence will corroborate the bad act evidence by showing Flucas was actively abusing Persons 1, 2, 4 and 5, and that he likely fathered children with all four of them, with several pregnancies beginning when the victims were

8

still minors. Gov't MIL No. 1 at 21; *see* Williams v. Illinois, 567 U.S. 50, 56 (2012) (describing DNA as one of the more "reliable" forms of evidence); *Huddleston v. United States*, 485 U.S. 681, 690 (1988) (explaining "the trial court neither weighs credibility nor makes a finding that the Government has proved" the prior bad act evidence actually happened ; rather, the court "simply examines all the evidence in the case and decides whether the jury could reasonably find [the prior bad act occurred]").

Equally important, the consistency across the victims' independent, detailed statements is its own form of corroboration: Persons 1 to 6 all allege a similar progression of sexual contact that led to intercourse, all in similar places within the home, and all interspersed with similar descriptions of extortion, financial abuse, and manipulation. *See* Gov't MIL No. 1 at 23 (describing sealed victim statements). Extrinsic documentary evidence further substantiates these statements. *Id*. (representing relevant bank and travel records confirm details within victim statements).

Finally, as detailed above, Flucas's *modus operandi* mirrors the abuse Flucas is charged with intending to commit here. *See Johnson*, 132 F.3d at 1283 (Defendant's " past conduct need not be identical to the conduct charged, but instead need only be similar enough to be probative of intent.").

In sum, any relevant abuse to which Flucas subjected Persons 1 to 6 is admissible under Rule 404(b) because it is probative of Flucas's intent, plan, *modus operandi*, absence of mistake, and is necessary to allow the government to present a full, coherent narrative.

        2.      <u>Rule 403 Balancing Test</u>

The proffered bad act evidence also survives the Rule 403 balancing test because it is far more probative than prejudicial. Although "[e]vidence of a defendant's prior acts of molestation will always be emotionally charged and inflammatory," its inflammatory nature is "not dispositive in and of itself." *LeMay*, 260 F.3d at 1030. Prior sexual abuse is commonly admitted under Rule 403 because it is inherently probative in sexual abuse prosecutions. *See, e.g.*, *United States v. Jayavarman*, 871 F.3d 1050, 1063 (9th Cir. 2017) (upholding introduction under Rule 403 of "audio recordings of Jayavarman's statements that he had sex with the victim

9

1 | in 2009 when she was thirteen or fourteen years old"); *Johnson*, 132 F.3d at 1283 (court did not
2 | abuse its discretion in admitting witness accounts of sexual contact from 13 years earlier).

Here, as detailed above, evidence of Flucas's history of abuse and control over Persons 1 to 6 is highly probative. It is relevant to prove Flucas's intent to continue the abuse in California, after crossing state lines. It is relevant to explain to the jury the peculiar family dynamic Flucas fostered, through which he allegedly controlled, subdued and abused the young women for years undetected. It is relevant to explain why the victims initially lied to protect their father. This probative value substantially outweighs the possible risk that the bad act evidence will unfairly prejudice the defense. The best evidence often is highly prejudicial even if admissible. *United States v. Parker*, 549 F.2d 1217, 1222 (9th Cir. 1977) (citation omitted).

That Persons 5 and 6 are not victims on which charges are based does not diminish the probative value of bad act evidence pertaining to them. *See United States v. Kinslow*, 860 F.2d 963, 967 (9th Cir. 1988) (finding no error where district court admitted evidence of assault against mother to prove intent to assault daughters, because this prior bad act evidence "establish[ed] Kinslow's need to exercise power over the females in the Blades family"), *disapproved of on other grounds by United States v. Brackeen*, 969 F.2d 827 (9th Cir. 1992); *cf. United States v. Hadley*, 918 F.2d 848, 851 (9th Cir. 1990) (affirming admission of prior sexual abuse against an uncharged victim; noting although defendant "stopped sexually abusing this witness ten years prior to the abuse for which he was convicted," the evidence was nonetheless admissible given the "similarity in space and practice between the prior act and the offense charged"). The abuse against Persons 5 and 6 is also so inextricably intertwined with the abuse against Persons 1 to 4 that it "constitutes part of the transaction" and is "necessary" to offer a coherent narrative. *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004); *see also United States v. Loftis*, 843 F.3d 1173, 1178 (9th Cir. 2016) (explaining in fraud conspiracy context that "[b]ecause the uncharged transactions were part of the overall scheme, the evidence was inextricably intertwined with, and part of the same transaction as, the conduct alleged in the indictment.") (citation and quotations omitted); *see also United States v. Layton*, 767 F.2d 549, 554 (9th Cir.1985) (noting district court has wide latitude in determining the admissibility of

evidence under this standard). The government's anticipated Rule 404(b) evidence is admissible as to all six victims.

### C. Conclusion

The court GRANTS the government's motion to admit the full extent of Flucas's prior abuse against Persons 1 to 6. The Rule 414 evidence is admissible for any purpose; all other relevant prior abuse is admissible only for non-propensity purposes.

As discussed at hearing, given the number of victims and the frequency and longevity of alleged abuse, the evidence may at some point become cumulative, although the court recognizes the complexity of the case likely supports the presentation of substantial evidence. *See United States v. Elksnis*, 528 F.2d 236, 238-39 (9th Cir. 1975) (exclusion of relevant, but cumulative, evidence is within trial court's discretion); *but see United States v. Ives*, 609 F.2d 930, 933 (9th Cir. 1979) (permitting evidence of defendant's mental state over approximately eight years; noting "the fact that [the act] is repeated does not render the evidence cumulative, but is probative of duration"), *and United States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990) (explaining evidence is not needlessly cumulative simply because the record contains other sufficient evidence; particularly where specific mindset is at issue, which is inherently difficult to prove). Should such evidence needlessly accumulate, the court may sustain a defense objection.

### III. TESTIMONY BY TWO-WAY CLOSED CIRCUIT TELEVISION

The government seeks a court order permitting Person 3, Flucas's 16-year-old daughter, to testify by two-way closed-circuit television as provided by 18 U.S.C. § 3509(b). *See* Gov't MIL No. 3, ECF No. 69. Person 3 alleges Flucas sexually abused her for a decade beginning when she was six years old. *See* Lodging Notice, ECF No. 109 (lodging *in camera* copies of videotaped deposition). Pointing to an opinion from Person 3's therapist, the government argues Person 3 is too fearful and fragile to testify in Flucas's presence. Gov't MIL No. 3 at 3 (citing declaration proposed for filing under seal). Flucas opposes. Flucas Opp'n, ECF No. 95.

A. <u>Legal Standard</u>

The government relies on 18 U.S.C. § 3509(b), which provides, "In a proceeding involving an alleged offense against a child, the attorney for the Government . . . may apply for an order that the child's testimony be taken in a room outside the courtroom and be televised by 2-way closed circuit television." Flucas does not dispute that Person 6 qualifies as a child who was allegedly sexually abused. *See id.* § 3509(a)(2)(A) (defining a "child" as anyone under 18 "who is or is alleged to be . . . a victim of a crime of physical abuse, sexual abuse, or exploitation"). Before permitting this statutory procedure to be followed, however, the court must conclude the child is unable to testify in front of the defendant, and this conclusion "shall" be supported "with findings on the record." *Id*. § 3509(b)(1)(C). The conclusion may be based on (1) fear of the defendant; (2) a "substantial likelihood" established by expert testimony that testifying in front of the defendant would cause the child emotional trauma; or (3) conduct by defendant or his attorney that makes the child unable to continue testifying. *Id*. § 3509(b)(1)(B)(i)-(iii).

Here, the government cites all three bases, but relies primarily on (1) and (2). *See* Gov't MIL No. 3 at 4 n.4. Because the proposed procedure is an exception to Flucas's constitutional right to confront his accusers, it is permissible only if Person 3's countervailing interests are sufficiently compelling to justify the intrusion. The landmark case that first balanced these competing interests is *Maryland v. Craig*, 497 U.S. 836 (1990). In *Craig*, the Court rejected a Confrontation Clause challenge to a Maryland statute that allowed a child victim in a molestation case, under certain circumstances, to testify via one-way closed circuit television through which the defendant could see the victim, but not vice versa. *Id.* at 860. The Court explained "the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial," but this preference "must occasionally give way to considerations of public policy and the necessities of the case." *Id.* at 849 (original emphasis; citation and quotations omitted). What qualifies as "necessary" depends on (1) whether the procedure is "necessary to protect the welfare of the particular child witness"; (2) whether the alleged trauma is based not on a fear of being in the courtroom generally, but by the presence of the defendant specifically; and (3) whether the

anticipated emotional distress "is more than *de minimis*, *i.e.*, more than mere nervousness or excitement or some reluctance to testify." *Id.* at 855-56 (citations and quotations omitted).

    B.    <u>Discussion</u>

Here, all three factors show Person 3's interest in testifying by closed-circuit television is necessary. The government has provided the following materials, *in camera* and seeks to file them under seal: A copy of Person 3's videotaped child forensic interview from January 2018, and a rough transcript thereof;[2] notes from Person 3's subsequent FBI interview; and a sworn declaration from Person 3's treating therapist Ms. Stephanie Brown. *See* Gov't MIL No. 3 (describing documents for which sealing requested); Notice of Lodging (pertaining only to Person 3's interviews). At hearing, defense counsel argued Ms. Brown's declaration is "of significant public interest" and that a redacted version should be viewable. Having considered the factors set forth in *Oregonian Publishing Co. v. U.S. District Court for the District of Oregon*, 920 F.2d 1462 (9th Cir. 1990), the court finds the sensitive information contained within this declaration, particularly on page 2, does not lend itself to redaction. Accordingly, the declaration shall be filed under seal, though Ms. Brown's 3-page curriculum vitae shall be filed on the public docket.

In her interviews, Person 3 describes how Flucas progressively abused her, starting with external touching when she was six years old, then moving to sex toys, digital penetration, oral copulation, and finally sexual intercourse soon after she turned 12. *See* Gov't MIL No. 3 at 2 (describing generally the *in camera* material details). Person 3 describes the manipulative tactics Flucas used to control her. She describes her post-abuse tribulations, which include self-harm and attempted suicide. She describes her fear about speaking out about the abuse. And she describes a forcible rape scene shortly before Flucas's arrest: Person 3 had just tried to commit suicide by overdosing on pills; Flucas found her and immediately started "doing stuff to her." She threw up. Then Flucas raped her.

---

[2] The court has reviewed the transcript in full and watched portions of the videotaped interview.

13

With this backdrop, and after weekly therapy sessions for the past five months, Person 3's treating therapist has declared under oath that Person 3 cannot testify in Flucas's presence. Stephanie Brown Decl. ¶¶ 3-4 (sealed). Ms. Brown declares that if forced to testify in Flucas's presence, it is highly likely that Person 3 would shut down on the stand and that she would suffer the kind of emotional trauma § 3509(b)(1)(B) contemplates. *Id.* ¶¶ 6-9. Ms. Brown describes Person 3's susceptibility to Flucas's intimidation and her insufficient coping skills. *Id.* ¶¶ 6-8. Finally, Ms. Brown opines that Person 3 does not fear testifying or being in court generally; she fears testifying in front of Flucas specifically. *Id.* ¶ 10. Because Ms. Brown's declaration contains extremely sensitive information, the court does not review its further detail here. But based on the content therein, the court is persuaded the trauma Person 3 may suffer if forced to testify in Flucas's presence is not *de minimis*.

At this point, then, the court is satisfied that under § 3509(b)(1)(B)(ii), based on the information provided to the court prior to trial, Person 3 will be unable to provide competent testimony in Flucas's presence about the alleged decade of sexual abuse by Flucas. The court, however, reserves the right to question Person 3 *in camera* prior to her trial testimony to test this conclusion. The court overrules Flucas's contention that § 3509(b)'s codified procedure violates his confrontation rights, as binding authority has consistently upheld the statute and rejected such challenges. *See, e.g.*, *United States v. Miguel*, 111 F.3d 666, 669 (9th Cir. 1997); *United States v. Garcia*, 7 F.3d 885, 888 (9th Cir. 1993); *United States v. Etimani*, 328 F.3d 493, 501 (9th Cir. 1993). As a separate matter, the court is unpersuaded by Flucas's argument based on his right to a public trial. He provides no authority to support the argument and the court is aware of none. Moreover, the issue appears moot: At hearing, the court offered to provide enough monitors for every audience member to see Person 3 as she testifies, and defense counsel conceded such an arrangement would remove the public trial right concern.

   C.   Procedure

The court will adhere to the codified procedure as follows. Person 3 will testify from a separate room connected to the courtroom by close circuit television and only the following people will be permitted inside the room while she testifies: (1) Attorneys for both

parties and Person 3's attorney or appointed guardian ad litem; (2) persons necessary to operate the closed circuit equipment, (3) a court-appointed judicial officer; and (4) anyone else whose presence is "necessary to the welfare and well-being of the child." 18 U.S.C. § 3509(b)(1)(D).

Person 3's testimony will be "transmitted by two-way closed-circuit television into the courtroom for viewing and hearing by the defendant, jury, judge, and public." *Id.* § 3509(b)(1)(D).

Throughout Person 3's testimony, she must be able to see Flucas and hear the judge. *Id.* § 3509(b)(1)(D). This does not mean a monitor must be directly in her "field of vision while she testifies"; it is sufficient that she is told where the monitor is, she can easily see it from where she sits, and the jury can see if she looks into the monitor while testifying. *Etimani*, 328 F.3d at 501. Flucas will be able to talk privately and contemporaneously with his attorney through a telephone connection during Person 3's testimony. 18 U.S.C. § 3509(b)(1)(D); *Miguel*, 111 F.3d at 670. To the extent Ms. Brown's presence is necessary to ensure Person 3's well-being, the court will allow it.

Subject to these procedures being followed to a tee, while reserving the right to confer with Person 3 outside the presence of the jury, the court GRANTS the government's motion to permit Person 3 to testify by two-way closed-circuit television.

IV. CONCLUSION

The court GRANTS the government's MIL No. 1 (ECF No. 68), MIL No. 2 (ECF No. 72) and MIL No. 3 (ECF No. 69) and DENIES Flucas's MIL No. 1 (ECF No. 103). Each ruling is without prejudice, subject to renewal at trial. *See Luce v. United States*, 469 U.S. 38, 41 (1984) (*in limine* rulings are subject to change depending on how the evidence unfolds at trial).

The government is ordered to file Ms. Brown's curriculum vitae on the public docket promptly. The Clerk of Court is directed to file Ms. Brown's declaration under seal.

IT IS SO ORDERED.

This order resolves ECF Nos. 68, 69, 72 and 103.

DATED: June 4, 2018.

UNITED STATES DISTRICT JUDGE

15