UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RODNEY FLUCAS,<br><br>Defendant. | No. 2:17-cv-00209-KJM<br><br><br><br>ORDER |

The government's request that the court order defendant to pay restitution to one of his victims is before the court. Previously, on February 25, 2019, the court sentenced defendant Rodney Flucas to a term of life imprisonment after a jury found him guilty of two counts of transportation with the intent to engage in criminal sexual activity under 18 U.S.C. §§ 2423(a), 2421(a), and a prior jury found him guilty of one count of attempted witness tampering under 18 U.S.C. § 1512(b)(2)(B). At sentencing, with the agreement of the parties, the court deferred a determination of restitution to allow the government time to obtain full information from the victim and for briefing on the issue. Having considered the parties' briefing and holding a hearing on the matter, the court GRANTS the government's restitution request and ORDERS the defendant to pay $117,000 in restitution as the amount justified to provide for the victim's long-term psychological treatment and care.

I.  BACKGROUND

On October 25, 2017, the government initiated criminal proceedings against defendant Rodney Flucas based on allegations, among others, that he sexually abused minor children under his care, including his biological children.  ECF No. 1.  The operative third superseding indictment charged Flucas with two counts of transporting minors across state lines with the intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a), one count of transporting an adult – the victim who seeks restitution here -- with intent that she engage in incest in violation of 18 U.S.C. § 2421(a) and one count of attempted witness tampering in violation of 18 U.S.C. § 1512(b)(2)(B).  ECF No. 58.

On June 1, 2018, the case proceeded to trial on all counts.  ECF No. 130.  After a fifteen-day jury trial, the jury returned a guilty verdict on count four, witness tampering, but was not able to reach a verdict on the remaining counts.  ECF Nos. 184, 187.  Accordingly, the court declared a mistrial on counts one, two and three.  ECF No. 184.  The government elected to retry the case, and, after the court granted the government's unopposed motion to dismiss count three, the two remaining transportation counts were retried on September 4, 2019.  ECF Nos. 254, 255.  After a twelve-day jury trial, the second jury returned a guilty verdict on both transportation counts, counts one and two.  ECF Nos. 303, 308.

On February 12, 2019, the court sentenced defendant to a term of life imprisonment as to count one, 120 months as to count two and 240 months as to count four, all to be served consecutively for a total term of life imprisonment.  ECF Nos. 352, 356.  As noted, the court deferred the question of restitution to a later date, setting a hearing date on that question.  ECF No. 352.  The government has filed a memorandum with supporting documentation asking the court to order $117,000 in restitution to cover the cost of victim B.F.'s[1] psychological counseling needs.  Gov't Memo, ECF No. 382.  Defendant filed an opposition memorandum conceding that $6,100 in restitution for past psychological treatment is appropriate but opposing any restitution beyond that amount, arguing any more would not properly reflect treatment for the

---

[1] The court continues to follow the naming convention used throughout this prosecution in order to protect the victim's anonymity.

harm the victim sustained during the time period relevant to the crimes of conviction. Def.'s Opp'n, ECF No. 386. On November 4, 2019, the court held the restitution hearing and, after hearing oral argument, submitted the matter for resolution by written order.

II.     LEGAL STANDARD

"The Mandatory Victims Restitution Act ('MVRA'), 18 U.S.C. § 3663A, requires a district court to 'order a defendant to make restitution to a victim of certain specified offenses.'" *United States v. Eyraud*, 809 F.3d 462, 467 (9th Cir. 2015) (citation omitted). Under § 3663A(a)(1), restitution is mandatory for "an offense described in subsection (c)," which includes "an identifiable victim or victims [who] has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1)(B). Where bodily injury results, "[t]he order of restitution shall require that such defendant . . . pay an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care . . . ." *Id.* § 3663A(b)(2)(A). Here, it is undisputed the MVRA applies to the victim at issue. *See* Gov't Memo at 1 ("The Mandatory Victim Restitution Act authorizes payments for future mental health care for a victim of a federal crime involving child sex abuse."); Def.'s Opp'n at 1 ("The Mandatory Restitution Act permits restitution to be awarded for costs of psychological counseling . . . ."); *see also* Presentence Investigation Report ("PSR"), ECF No. 353, ¶¶ 44, 156 (sealed) (listing 18 U.S.C. § 3663A as the statutory provision governing restitution).

Under the MVRA, "[t]he government has the burden of establishing by a preponderance of the evidence that the victim's damages were caused by the conduct of which the defendant was convicted." *United States v. Peterson*, 538 F.3d 1064, 1074–75 (9th Cir. 2008) (quotation omitted). "Restitution may compensate victims only 'for actual losses caused by the defendant's criminal conduct.'" *Id.* at 1075 (quoting *United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 926 (9th Cir. 2001)); 18 U.S.C. § 3663A(a)(2) ("'[V]ictim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered . . . .").

/////

/////

3

Regarding the causal link between the defendant's conduct of conviction and the victim's harm, the Ninth Circuit provides the following guidance:

> Defendant's conduct need not be the sole cause of the loss, but any subsequent action that contributes to the loss, such as an intervening cause, must be directly related to the defendant's conduct. The causal chain may not extend so far, in terms of the facts or the time span, as to become unreasonable.

*Peterson*, 538 F.3d at 1075 (quoting *Gamma Tech*, 265 F.3d at 928). Where "the MVRA's causation standard is satisfied, a district court must include the amount of that loss in its restitution order." *Eyraud*, 809 F.3d at 467.

III. <u>DISCUSSION</u>

The government asks that the court impose $117,000 in restitution for the victim's long-term psychological treatment. Gov't Memo at 2. The request takes account of the victim's three young children, aged three, five and seven years old, all of whom were fathered by the defendant. *Id.* at 2; PSR ¶ 20. At or about the time of defendant's initial arrest on state charges, which ultimately led to his federal case, the victim was left homeless for a period of time and separated from her children, who were taken into the Child Protective Services system. Since then, the victim has undergone at least twenty individual counseling sessions designed to assist her in achieving personal healing and reunification with her children. Sealed Evaluation, ECF No. 381-1, at 13.

In support of the request, the government submits a sealed psychological evaluation detailing the victim's history of abuse perpetuated by the defendant, the symptoms caused by that abuse, the treatment necessary to help her become "a safe and protective parent [to her three children] within the next 6–12 months," and the ongoing treatment necessary to facilitate the reunification process with her family. *Id.* at 11–15. To achieve these goals, the evaluation recommends the victim "continue to engage in weekly individual therapy with a provider who has training in complex trauma and coercion," and although "she could likely be a safe parent within 12 months, she will likely need to continue to engage in personal treatment while her children are in her care." *Id.* at 13.

4

The government argues the psychological evaluation supports restitution payments to cover a period of fifteen years, with funds sufficient to pay for one sixty-minute therapy session per week. Gov't Memo at 2. As the government clarified at hearing, the fifteen-year estimate comprises the period of time for the victim's youngest child, who currently is three, to reach eighteen years of age. *See* PSR ¶ 20 (listing ages of victim's children). Payment information attached to the evaluation provides that a 60-mintue session costs $150. Sealed Payment Policy, ECF No. 381-2. Based on these figures, the government makes the following calculation: $150/week x 52 weeks x 15 years = $117,000.

As noted, defendant concedes restitution is appropriate for all therapy-related costs already incurred. Def.'s Opp'n at 2. This includes twenty therapy sessions at $150 per session, totaling $3,000, a comprehensive psychological evaluation for $1,900 and an educational evaluation for $1,200, with a combined total of $6,100. *Id.* Defendant, however, objects to any restitution award exceeding $6,100, arguing the causal connection between the conduct of conviction and the victim's harm is too attenuated given the victim's extensive history of abuse, much of which stems from conduct perpetrated by the defendant, and from a time period, unrelated to the conduct of conviction here. *Id.* More specifically, defendant argues that because the victim's abuse – at the hands of defendant -- began "in the 9th grade and continued until she was 18, this Court must apportion restitution for the time period related to this offense of conviction and exclude any harm caused by the crimes she allegedly suffered during the 4 years in Georgia when she was a minor." *Id.*

For this position, defendant relies on the case of *Paroline v. United States*, 572 U.S. 434 (2014). In *Paroline*, the Court addressed the unique problem created by 18 U.S.C. § 2259's mandatory restitution provision, a provision similar to § 3663A at issue here. Section 2259 mandates that those who traffic in child pornography pay restitution to the victims of their trafficking activities. *See generally* 18 U.S.C. § 2259. The very nature of trafficking in pornographic materials, particularly given the ease of transmission across the internet, poses a challenge when attempting to define the proximate reach of an offender's harm, as addressed in *Paroline*. There, the defendant was convicted for possessing between 150 and 300 images of

child pornography, two of which depicted a specific victim. *Paroline*, 572 U.S. at 441. It was that victim's uncle, not the defendant, who originally abused her and placed images of his abusive conduct on the internet for wide distribution and viewing. *Id.* at 440. At a minimum, the possessors of these images numbered in the thousands. *Id.* at 440–41. The victim, however, sought restitution from the defendant under § 2259 for the full extent of her harm, knowing images of her being abused were, and would likely continue to be, viewed by many other persons around the world. *Id.*

The problem created by the scenario in *Paroline* was how to define the outer limits of one defendant's liability when a multitude of independent forces and other persons also contribute to a victim's present and future harm. In attempting to square § 2259's "proximate result" language with its underlying remedial purpose, the *Paroline* Court crafted a rule of apportionment whereby a court "should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Paroline*, 572 U.S. at 458. In other words, "[t]he required restitution [must] be a reasonable and circumscribed award imposed in recognition of the indisputable role of the offender in the causal process underlying the victim's losses and suited to the relative size of that causal role." *Id.* But again, the rule was crafted to strike a delicate balance between recognizing the real harms of victims of internet distribution of child pornography and at the same time respecting the constitutional limits associated with a fair application of notions of proximate causation. In crafting the rule, the Court recognized the unique circumstances posed by the *Paroline* case. *See id.* at 449 ("The problem stems from the somewhat atypical causal process underlying the losses the victim claims here."); *id.* at 458 ("In this special context, where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry . . . .").

Contrary to defendant's assertions, the concerns presented in *Paroline* are not at issue here; thus, the rule of apportionment articulated in *Paroline* does not control the court's restitution determination. Unlike in *Paroline*, the victim here suffered abuse at the hands of a

6

single perpetrator, the defendant, and although the full extent of the victim's harm may be traced back to a history of abuse predating the time period underlying the conviction conduct, that fact alone is insufficient to break the causal link required to impose restitution under § 3663A. *See Peterson*, 538 F.3d at 1075 ("Defendant's [conviction] conduct need not be the sole cause of the loss . . . .") (citation omitted). Indeed, given the systematic manner in which the defendant groomed, manipulated and abused the victim and the long-term and ongoing effect of this harm, even confined to the period of the conviction conduct during which the victim was carrying her third child by defendant as he moved homes with his sprawling family to a new state, warrants an award of restitution covering counseling for the fifteen year period requested by the government. *See* PSR ¶¶ 20–24; Sealed Evaluation at 13 (explaining complexity of treating patient who has "experienced such extensive sexual and emotional abuse at the hands of their biological parent"). This is particularly true where there is no evidence of other, subsequent harm exacerbating the damage flowing from the conviction conduct, which might otherwise serve to circumscribe the proximate reach of that conduct. *See Peterson*, 538 F.3d at 1075 ("[A]ny subsequent action that contributes to the loss, such as an intervening cause, must be directly related to the defendant's conduct.").

In sum, the government satisfies its burden under § 3663A by proving by a preponderance of the evidence that the victim's damages were caused by the conduct for which the defendant stands convicted. *Peterson*, 538 F.3d at 1074–75. The sealed psychological evaluation provides compelling, professional evidence of the harm defendant inflicted and the extensive treatment necessary to allow the victim now to develop into a fully functional parent and productive member of society and to learn to identify the markers of a healthy family unit. *See* Sealed Evaluation at 13–15. The itemized cost of treatment and the defined time period of fifteen years provides sufficient certainty such that the restitution award appropriately reflects a measure likely to achieve a restorative result.

/////

/////

/////

## IV. CONCLUSION

Defendant Rodney Flucas is ordered to pay restitution in the amount of $117,000 for the long-term psychological counseling needs of victim B.F. The Clerk of Court shall issue an amended judgment and commitment reflecting the award of this restitution amount.

IT IS SO ORDERED.

DATED: November 21, 2019.

_____
UNITED STATES DISTRICT JUDGE